**NOTICE**
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250703-U

NO. 4-25-0703

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

**FILED**
July 20, 2026
Carla Bender
4th District Appellate
Court, IL

| | |
|---|---|
| MARCO GUTIERREZ, | ) Appeal from the |
|      Plaintiff-Appellant, | ) Circuit Court of |
|      v. | ) Knox County |
| THE ILLINOIS CIVIL SERVICE COMMISSION; | ) No. 24MR40 |
| TERESA C. SMITH, in Her Official Capacity as | ) |
| Chairperson of the Civil Service Commission; | ) |
| DAVIDLUECHTEFELD, in His Official Capacity as a | ) |
| Commissioner of the Civil Service Commission; G.A. | ) |
| FINCH, in His Official Capacity as a Commissioner of | ) |
| the Civil Service Commission; VIVIAN ROBINSON, in | ) |
| Her Official Capacity as a Commissioner | ) |
| of the Civil Service Commission; JUDY McANARNEY, | ) |
| in Her Official Capacity as a Commissioner of the Civil | ) |
| Service Commission; THE ILLINOIS DEPARTMENT | ) |
| OF CORRECTIONS; and LATOYA HUGHES, in Her | ) |
| Official Capacity as Acting Director of the Department of | ) |
| Corrections, | ) Honorable |
|      Defendants-Appellees. | ) James G. Baber, |
| | ) Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Presiding Justice Steigmann and Justice Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, concluding the Illinois Civil Service Commission's
decision to discharge plaintiff from his position as a correctional officer for cause
was not arbitrary, unreasonable, or unrelated to the requirements of service.

¶ 2        This appeal involves administrative review of the Illinois Civil Service

Commission's (Commission) final administrative decision which affirmed the action taken by

the Illinois Department of Corrections (Department) discharging plaintiff, Marco Gutierrez, from

his position as a correctional officer with the Department. On appeal, Gutierrez does not challenge the Commission's findings of fact as to the conduct charged. Rather, he contends discharge was not the appropriate level of discipline under the circumstances and the Commission's decision was arbitrary, unreasonable or unrelated to the requirements of his service. We affirm.

¶ 3                                I. BACKGROUND

¶ 4                        A. Gutierrez's Employment and Termination

¶ 5            The following facts gleaned from the record are based significantly on the parties' stipulation of facts and agreed upon exhibits presented to the administrative law judge (ALJ).

¶ 6            Gutierrez began working as a correctional officer for the Department at Hill Correctional Center in Galesburg in March 2014. On April 2, 2021, Gutierrez tested positive for COVID-19. Gutierrez was unable to work and began receiving temporary total disability benefits through the workers' compensation system as well as disability benefits from the State Employee Retirement System (SERS). Gutierrez has not worked as a correctional officer or in any other capacity since testing positive for COVID-19.

¶ 7            Gutierrez's position was subject to a collective bargaining agreement between the Illinois Department of Central Management and the Illinois Federation of Public Employees Union. Article XII, section 3(B)(4) of the collective bargaining agreement provided that while an employee is on disability leave, the employee must provide written verification of continued disability from a medical provider, including the diagnosis, prognosis, and expected duration of the disability, "no less often than every 30 days during a period of disability, unless the nature of the disability precludes the need for such frequency of verification." Article XII, section 3(C) stated an employee's failure to provide verification of continued disability "upon reasonable

request shall on due notice cause termination of such leave."

¶ 8 For Gutierrez's absences from work to be authorized, the Department required him to: (1) call in before the start of every workday that he was scheduled to work to advise of his inability to work that day and (2) provide a CMS-95 statement every 30 days to document his condition that kept him from working. A CMS-95 statement is a standardized form for "Authorization for Disability Leave and Return to Work." It is completed by an employee's physician and details the employee's diagnosis, treatment, progress, and extent of disability and provides authorization for the employee to be absent from work or to return to work.

¶ 9 Gutierrez complied with the requirement that he call in before the start of every workday that he was scheduled to work to advise of his intention to not work until October 21, 2021. On that day, Guiterrez received an e-mail from Tammy Morgan, a human resources representative for Hill Correctional Center advising him that he no longer needed to call in, as he had been submitting medical documentation concerning his condition in CMS-95 statements from his treating physician, Dr. Kevin Jeffries. However, Morgan informed Gutierrez he was still required to provide CMS-95 statements every 30 days to verify his medical condition and his inability to work. Gutierrez did so, submitting CMS-95 statements until August 19, 2022.

¶ 10 At a follow-up appointment on August 19, 2022, Dr. Jeffries completed a CMS-95 statement for Gutierrez;however, he also informed Gutierrez that he would not do so moving forward. Dr. Jeffries referred Gutierrez to the University of Iowa Health Care Post-COVID-19 Clinic in Iowa City (referred to as the "Long Hauler's Clinic"). Notably, the CMS-95 statement Dr. Jeffries provided that day was incomplete, as it did not describe Gutierrez's treatment, physical impairment or limitations, or the extent of his disability, including whether he was temporarily totally disabled from his regular occupation or any occupation.

¶ 11        On September 22, 2022, Gutierrez's attorney sent letters to the Department's workers' compensation case manager and the SERS manager advising them that he may not be able to timely provide an updated CMS-95 statement because Dr. Jeffries was no longer willing to provide them and he was having difficulty finding another physician to complete the form. He explained further, Gutierrez was "fervently working to accomplish two things as soon as possible: one, find a new general practitioner who is taking new patients; who is willing to treat individuals with long haul symptoms; and who is willing to accept the minimal burden of completing CMS-95s and SERS Disability Medical Reports as required—and/or—two [*sic*] be seen at the [Long Hauler's Clinic]."

¶ 12        A letter dated October 26, 2022, was sent to Gutierrez from DeAnna Clark, manager of compliance and control for the Illinois Public Safety Shared Services Center. The letter stated the last CMS-95 statement received by the Department was provided by Dr. Jeffries and dated August 19, 2022. The letter explained Gutierrez's failure to return from leave or take other appropriate action by November 9, 2022, could result in (1) termination of his leave of absence, (2) each workday thereafter being considered an unauthorized absence, and (3) scheduling a pre-disciplinary meeting to contemplate disciplinary action, including a possible discharge. The letter reminded Gutierrez he was previously advised that employees requesting extension of disability leave were required to provide a CMS-95 statement every 30 days. The letter informed Gutierrez that, upon termination of a leave of absence, failure to return to work within five workdays could be cause for discharge. This letter was properly addressed and mailed to Gutierrez's home address through the United States Postal Service (USPS) via certified mail, return receipt requested. However, the letter was "unclaimed" and returned to sender on November 22, 2022. Both Gutierrez and his wife testified they did not receive any notification

regarding the letter.

¶ 13 On or about February 12, 2023, Gutierrez received three documents from the Department informing him that he was being discharged for cause, effective February 3, 2023. The documents were as follows: "Notice of Approval of Written Charges by the Director of Central Management," dated February 2, 2023; "Illinois Department of Central Management Services Personnel/Position Action Form," dated January 18, 2023; and "Discharge for Cause," dated February 3, 2023. The Discharge for Cause stated,

> "Marco Gutierrez had been off on a leave of absence and on October 26, 2022, Mr. Gutierrez received a letter from Illinois Public Safety Shared Services Center requesting a completed Physician's Statement (CMS-95) be returned to them by November 9, 2022. If the form was not returned by the due date, every day thereafter would be considered an unauthorized absence and could result in termination. Mr. Gutierrez has not returned a completed Physician's Statement (CMS-95) to date."

The Discharge for Cause listed Gutierrez's disciplinary history which included 1-day, 3-day, and 5-day suspensions for unauthorized absences in February 2021. It indicated Gutierrez had been placed on suspension pending discharge effective January 19, 2023.

¶ 14 Gutierrez and his wife both claimed they did not know the Department was taking action to terminate his employment before February 12, 2023.

¶ 15 On March 3, 2023, Gutierrez was examined by Dr. Todd Wiblin at the Long Hauler's Clinic. Dr. Wiblin completed a CMS-95 statement, showing Gutierrez was temporarily totally disabled from performing his normal occupation or any occupation with an "unknown" return to work date. Gutierrez had a follow-up visit with Dr. Wiblin on August 14, 2023, and he

obtained a CMS-95 statement with the same conclusions. On January 25, 2024, Gutierrez saw Dr. Wiblin again. The CMS-95 statement from that visit indicated Gutierrez was temporarily totally disabled from performing his normal occupation or any occupation with an "unknown" return-to-work date. However, Dr. Wiblin also checked "yes," reflecting his opinion that Gutierrez was also permanently and totally disabled from his normal occupation and any occupation. He noted Gutierrez had "not made significant improvement in the past nine months."

¶ 16                     B. Civil Service Commission Proceedings

¶ 17        On February 20, 2023, Gutierrez made a timely written request to appeal the charges and his discharge from the Department. The parties agreed to forgo an evidentiary hearing and submitted a stipulation of facts and agreed upon exhibits. The parties submitted written closing arguments in May 2024.

¶ 18        In its written closing argument, the Department contended there was no genuine dispute that Gutierrez violated its rules by failing to submit a CMS-95 statement every 30 days after August 19, 2022. Further, Gutierrez was sent a letter on October 26, 2022, informing him that if he failed to submit a CMS-95 statement by November 9, 2022, he would be required to return to work within five days. Although Guiterrez disputes receiving the letter, the Department argued the mailbox rule presumes delivery of the mailed item. The tracking history of the letter demonstrated USPS attempted to deliver the letter, was unable to do so, and left Gutierrez notice that a letter requiring his signature was available for pick-up. The Department argued Gutierrez should not be allowed to avoid service and then feign ignorance of the letter. Further, Gutierrez was aware of the CMS-95 requirements based on his timely submission of the statements in previous months. The Department contended discharge was the appropriate level of discipline. Gutierrez had been off work since April 2021. In January 2024, almost three years later, his

doctor determined he had made no progress and was permanently and totally disabled from any occupation. The Department referred to Gutierrez's circumstances as a "resign, retire, or discharge" case and argued the Commission should uphold the discharge, as public policy should not favor a permanently and totally disabled employee from remaining an employee indefinitely.

¶ 19    In his written closing argument, Gutierrez acknowledged he was "in technical violation" of the applicable rules by failing to submit the required CMS-95 statement by November 9, 2022, and continuing to fail to file CMS-95 statements every 30 days thereafter. However, he argued he did not willfully or intentionally fail to comply with the CMS-95 requirements because he did not have a physician to complete the forms. He noted his treating doctor declined to provide any further CMS-95 statements after August 19, 2022, and instead, referred him to the Long Hauler's Clinic. Gutierrez's wife expressed concerns about compliance in an e-mail to his attorney on August 29, 2022. Thereafter, his attorney sent letters indicating the problems Gutierrez was having in obtaining an updated CMS-95 statement and that he was "fervently working" to take the necessary steps to accomplish it. Gutierrez argued further he did not know the Department was taking action to discharge him until February 13, 2024. At his first opportunity to be seen at the Long Hauler's Clinic on April 4, 2023, Gutierrez secured an updated CMS-95 statement which found Gutierrez temporarily totally disabled from performing his normal occupation or any occupation. He secured updated CMS-95 statements on August 14, 2023, and January 25, 2024. He argued his "actions in this matter do not raise [*sic*] to the level of termination." Further, he contended the subsequent CMS-95 statements filed could not be used to justify his discharge as a "resign, retire, or discharge case" as "it remains to be seen" if he is permanently and totally disabled and he would be entitled to a hearing on that issue.

¶ 20    On July 12, 2024, the ALJ issued its proposed decision for the Commission,

- 7 -

finding the Department met its burden of proving that Gutierrez violated applicable rules and regulations by failing to timely provide CMS-95 statements and subsequently accumulating unauthorized absences until his discharge on February 3, 2023. The ALJ found the argument regarding Gutierrez refusing service of the October 21, 2022, letter informing him he had to return to work if he did not submit a CMS-95 insignificant because the Department properly provided notice via certified mail and Gutierrez acknowledged in his written closing argument that he was aware of the need to submit a CMS-95 statement to continue his leave of absence. When addressing the level of discipline, the ALJ found Gutierrez's discharge could not be upheld under a theory of "resign, retire, or discharge" because that was not a basis for discharge. The ALJ also noted Gutierrez made "some effort to find another doctor to justify his leave of absence," but "the fact remain[s] that [Gutierrez] had not worked since April 2, 2021, and he failed to provide the required CMS-95 form for several months before his discharge on February 3, 2023." The subsequent CMS-95 statements submitted by Dr. Wiblin were deemed unpersuasive to excuse Gutierrez's failure to comply with the requirements. The ALJ noted Dr. Wiblin's first statement was submitted on April 4, 2023, more than seven months after Dr. Jeffries last provided an incomplete CMS-95 statement to justify Gutierrez's leave. Dr. Wiblin's January 25, 2024, CMS-95 statement "confusingly determined" Gutierrez was both "temporarily totally disabled" and "permanently and totally disabled" from all occupations. Thus, the ALJ found it "unclear" how that statement could be used to justify the continuation of Gutierrez's leave of absence. The ALJ acknowledged Gutierrez had significant continuous service and noted his prior suspensions for unauthorized absences. The ALJ concluded the Department "demonstrated that the proven charge constitutes a substantial shortcoming that in some way renders the employee's continuance in the position detrimental to the discipline and efficiency of

the service and that law and sound public opinion recognize as good cause for the employee's removal from the position."

¶ 21     Thereafter, the Commission affirmed and adopted the Proposal for Decision and certified it for enforcement. The Commission found the written charges for discharge were proven and warranted discharge for the reasons set forth in the Proposal for Decision.

¶ 22                    C. Complaint for Administrative Review

¶ 23     In August 2024, Gutierrez filed a complaint for administrative review in the circuit court seeking reversal of the Commission's final administrative decision as to his level of discipline. He claimed that discharge from the Department was not appropriate because his failure to timely submit CMS-95 statements was not his fault. Gutierrez further argued the Commission erroneously based its decision on the "resign, retire, or discharge" theory by noting it was unclear how Dr. Wiblin's CMS-95 statements could justify Gutierrez's ongoing leave. The court affirmed the Commission's decision.

¶ 24     This appeal followed.

¶ 25                              II. ANALYSIS

¶ 26     All final decisions issued by the Commission are subject to administrative review. 20 ILCS 415/11a (West 2024). When undertaking such review, this court's role is to review the decision of the administrative agency rather than the judgment of the circuit court. *Department of Corrections v. Welch*, 2013 IL App (4th) 120114, ¶ 17. In a discharge case, the scope of review of the agency's decision involves a two-step process. *Illinois Department of Juvenile Justice v. Illinois Civil Service Comm'n*, 405 Ill App. 3d 515, 521 (2010). First, a reviewing court must determine whether the agency's findings of fact were contrary to the manifest weight of the evidence. *Marzano v. Cook County Sheriff's Merit Board*, 396 Ill. App. 3d 442, 446 (2009).

- 9 -

Second, a reviewing court must determine if the agency's "findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge does or does not exist." (Internal quotations marks omitted.) *Illinois Department of Juvenile Justice*, 405 Ill App. 3d at 521.

¶ 27    In this case, Gutierrez does not challenge the Commission's findings of fact as to the conduct charged. He acknowledges he failed to submit the requisite CMS-95 statement by November 9, 2022, resulting in unauthorized absences which were the basis of the Department's written charge for discharge. He argues, however, discharge was not the appropriate level of discipline because his reason for not submitting the CMS-95 statement in a timely manner was "beyond his control." Thus, the decision was "arbitrary or unreasonable or unrelated to the requirements of his service." He further argues the Commission's decision was arbitrary and unreasonable because it relied upon "conduct not charged *** which was tantamount to a discharge under the theory of 'resign, retire, or discharge.' "

¶ 28    Under these circumstances, the sole issue before us is the second step of the analysis: whether the Commission's findings of fact provided a sufficient basis for its conclusion that cause for discharge existed. When making this determination, "the question is not whether the reviewing court would have imposed a harsher or more lenient penalty, but whether the Commission substantiated its decision." *Welch*, 2013 Ill App (4th) 120114, ¶ 39. Our review is limited to whether the Commission "acted unreasonably or arbitrarily by imposing discipline that was otherwise inappropriate or unrelated to the needs of service." *McDonald v. Board of Trustees of Fire & Police Commissioners of Village of Maywood*, 2025 IL App (1st) 231616, ¶ 109.

¶ 29    Section 1.170 of the Illinois Administrative Code (Code) provides: "[i]n determining the appropriate level of discipline, the Commission shall consider the nature of the

offense, the employee's performance record, including disciplinary history, the employee's length of continuous service, and other relevant factors. Cause for discharge shall be in accordance with 80 Ill. Admin. Code 302.700." 80 Ill. Admin. Code § 1.170 (eff. May 1, 2025). Although subsequently amended, when this case was decided by the Commission, section 302.700 of the Code defined cause for discharge as "some substantial shortcoming which renders the continuance of an employee in a State position in some way detrimental to the discipline and/or efficiency of the service and which the law or sound public opinion recognizes as good cause for the employee no longer being held in that position." 80 Ill. Admin. Code § 302.700 (eff. Sept. 1, 1986). It is within this framework that the Commission concluded there was a sufficient factual basis for its conclusion that cause for discharge existed. We agree.

¶ 30        In considering the nature of the offense, the Commission acknowledged Gutierrez made "some effort" to find another doctor to justify his leave of absence. Yet, it is undisputed that Gutierrez knowingly failed to file the required CMS-95 statements for several months before his discharge. The record shows Gutierrez was well aware that he was required to submit a CMS-95 statement every 30 days because: (1) he was in compliance with the CMS-95 requirements for 18 months, (2) he received an e-mail from Morgan in October 2021 reminding him of the continued obligation, (3) he was informed by his treating physician that the September 18, 2022, CMS-95 statement would be the last one the physician would provide, and (4) his attorney acknowledged Gutierrez's potential noncompliance with the CMS-95 requirements in two separate letters sent to the Department and the SERS in September 2022. Gutierrez knew he failed to provide verification of his continued disability beginning in October 2022. Gutierrez also knew further action was required to avoid termination of his leave of absence and to prevent his continued absence from work being deemed unauthorized, yet he failed to take appropriate

- 11 -

action. Gutierrez contends the amount of time he had to wait for an appointment at the Long Hauler's Clinic was out of his control. However, he failed to demonstrate what efforts, if any, he made to continue his treatment, find an alternative physician, or keep the Department informed as was required during those months.

¶ 31 The Commission considered Gutierrez's "significant" length of continued service, which began in March 2014. It also considered Gutierrez's disciplinary history, which included three prior suspensions for unauthorized absences. The Commission found it "unclear" how the CMS-95 statements submitted by Dr. Wiblin after the date of Gutierrez's discharge could be used to justify the continuation of his leave of absence after the fact. Instead, the Commission found Gutierrez's failure to submit the requisite CMS-95 statement by November 9, 2022, resulting in months of unauthorized absences, constituted a substantial shortcoming that rendered his continuance in the position detrimental to the discipline and efficiency of the service and that law and sound public opinion recognize it as good cause for his removal from the position. Illinois courts have repeatedly upheld the discharge of an employee for unauthorized absences. See *e.g., Marzano v. Cook County Sheriff's Merit Board*, 396 Ill. App. 3d 442, 447 (2009) ("Management's right to discipline and ultimately to discharge an employee for absenteeism and tardiness is based on its right to operate efficiently."); *Lopez v. Dart*, 2018 IL App (1st) 170733, ¶ 77 (describing numerous cases where "our appellate courts have repeatedly held that a pattern of unexcused absences by a Sheriff's employee, even if caused by a medical condition, is detrimental to service and a basis for termination"). We conclude there was a sufficient factual basis for the Commission's determination that Gutierrez's failure to submit CMS-95 statements, which resulted in his continued absence from work being deemed unauthorized, was cause for his discharge.

¶ 32 Finally, we reject Gutierrez's argument the Commission's decision was based upon the substantive medical conclusions in Dr. Wiblin's CMS-95 statements and a theory of "resign, retire, or discharge." First, the Commission clearly stated, "[Gutierrez] is also correct that the discharge *cannot be upheld under the theory of 'resign, retire, or discharge'* because [he] was not discharged for that offense." (Emphasis added). Second, the Commission's decision was not based on any medical conclusions stated in Dr. Wiblin's post-discharge CMS-95 statements. In fact, the Commission found those statements, submitted more than seven months after Dr. Jeffries's last CMS-95 statement, were "unpersuasive as a means to excuse the untimely submission of the CMS-95s." The Commission remarked the CMS-95 statements submitted by Dr. Wiblin were inconsistent and it was unclear how they could be used to justify Gutierrez's continued leave of absence. Those CMS-95 statements did not serve as a basis for the Commission's decision to discharge Gutierrez.

¶ 33 Based on the foregoing, we conclude the Commission's decision to discharge Gutierrez from his position as a correctional officer for cause was not arbitrary, unreasonable, or unrelated to the requirements of service.

¶ 34 III. CONCLUSION

¶ 35 For the reasons stated, we affirm the judgment of the circuit court which confirmed the Commission's decision.

¶ 36 Affirmed.